IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

R.W., FATHER OF K.W., V.W.
AND A.W., CHILDREN,

        Appellant,

v.                                     Case No.  5D17-2010

DEPARTMENT OF CHILDREN AND
FAMILIES,

        Appellee.

_____/

DEPARTMENT OF CHILDREN AND
FAMILIES AND GUARDIAN AD LITEM
PROGRAM O/B/O K.W., V.W. AND A.W.,
CHILDREN,

        Appellants,

v.                                     Case Nos. 5D17-2012,
                                             5D17-2027

R.A.D. and R.W., PARENTS,

        Appellees.

_____/

Opinion filed October 31, 2017

Appeal from the Circuit Court
for Hernando County,
Donald Scaglione, Judge.

Edward Juan Lynum, of Lynum &
Associates, PLLC, Leesburg, for Father,
R.W.

Elliott Ambrose, Brooksville. for Mother,
R.A.D.

Stephanie C. Zimmerman, Deputy Director
& Statewide Director of Appeals, Children's

Legal Services, Bradenton, and Rachel Batten, Hernando County Children's Legal Services, Brooksville, for Department of Children and Families.

Laura J. Lee, Sanford, for Guardian Ad Litem Program.

PER CURIAM.

The Department of Children and Families (Department) and the Guardian ad Litem Program (GAL) appeal from the trial court's order denying a petition for termination of parental rights filed by the Department against both parents, R.A.D. and R.W. Although the trial court found three separate grounds for termination, it denied the petition because it found the Department had not proven that termination was the least restrictive means of protecting the children because the parents "require an opportunity to rehabilitate or fail." Instead, the court adjudicated the children dependent and directed the Department to provide the parents with a case plan. We affirm the trial court's findings that the Department proved grounds for termination of parental rights as to both parents, but reverse as to the trial court's finding that termination was not the least restrictive means. We also affirm the trial court's findings of dependency without further discussion.[1]

The children, K.W., V.W. and A.W., were sheltered in May 2016, based on allegations of substance abuse, mental health issues, domestic violence, and the parents' history with the Department. Based on the mother and father's extensive history of domestic violence, substance abuse, and dependency adjudications, the Department

---

[1] This court previously consolidated cases 5D17-2012 and 5D17-2027, both challenging the trial court's denial of the Department's petition for termination. For purposes of this opinion, we now also consolidate case number 5D17-2010, in which the father challenged the trial court's finding of dependency, with 5D17-2012 and 5D17-2027.

filed an expedited termination of parental rights petition instead of offering the parents another case plan. After a hearing, the trial court concluded that the Department proved grounds for termination against both parents under section 39.806(1)(c) (continuing involvement threatens, irrespective of services) and section 39.806(1)(l) (three or more removals caused by parent), and against the mother under section 39.806(1)(j) (chronic substance abuse), Florida Statutes (2017).

In its order, the trial court made extensive findings detailing a history of domestic violence and substance abuse on the part of the father, and chronic substance abuse on the part of the mother. The trial court summarized the parents' history as follows:

> The evidence and testimony at trial represents a historical biography of this family that dates back to 2005 for the mother and 2009 for the father. It paints a picture of a family plagued by violence and substance misuse. Since 2009, the mother and father have been in a violent, drug-fueled relationship. The victims of that relationship have been the parents' five children who have been removed out of their home on five occasions. [V.W.] and [K.W.] have been removed and placed in out-of-home care three times, initially after they almost died due to the mother's substance misuse and her failure to obtain proper medical care. The mother has been offered six case plans over the course of over a decade. The father has been offered four case[ ] plans over the course of eight years.

Most importantly, as to the mother, the trial court also expressly found that "[b]ased on the repeated cycle of behavior and the mother's history in the dependency system, there is absolutely NO reasonable basis to believe that she will improve and not engage in the same behaviors again in the future and cause the children to be uprooted and thrust back into the system." The trial court went on, finding that "[h]istory tells us that, even with her engagement in services, the mother will eventually repeat the same behaviors that have caused the removal of all seven of her children on multiple occasions."

3

As to the father, the trial court found that he had been offered four case plans and a host of services related to domestic violence and substance abuse treatment. In its order, the trial court found "[d]espite having access to services on four occasions, the father continues to revert back to the same behavior. The father appears to not want to change or acknowledge that there are any issues." The trial court also noted that the father "has not engaged in any services since the children were sheltered this last time."

Despite these findings, which are supported by competent, substantial evidence contained in the voluminous record on appeal, the court found the Department failed to prove termination was the least restrictive means of protecting the children from harm because the parents "require an opportunity to rehabilitate or fail." In light of its least restrictive means finding, the court did not consider whether termination was in the children's manifest best interests, but "note[d] and agree[d] [with the Department and the GAL] that these children need stability as well as permanency."

We reverse because, although the record contains competent, substantial evidence that the Department established grounds for termination pursuant to sections 39.806(1)(c) and 39.806(1)(l), Florida Statutes (2017) as to both parents, and section 39.806(1)(j) as to the mother, the trial court misconstrued the requirements of the least restrictive means test. To terminate parental rights, the Department must prove that termination is the "least restrictive means of protecting the child from serious harm." *Statewide Guardian Ad Litem Program v. A.A.*, 171 So. 3d 174, 177 (Fla. 5th DCA 2015). However, the "least restrictive means" test is not intended to preserve a parental bond at the cost of a child's future. *E.g.*, *Dep't of Child. & Fams. v. B.B.*, 824 So. 2d 1000 (Fla. 5th DCA 2002). Rather, it simply requires that measures short of termination should be

4

utilized if such measures can permit the safe re-establishment of the parent-child bond. *Id.* at 1009.

Ordinarily, prior to termination, the department must "show that it has made a good faith effort to rehabilitate the parent and reunite the family." *Padgett v. Dep't of Health & Rehab. Servs.*, 577 So. 2d 565, 571 (Fla. 1991). However, the Legislature has specifically provided that no case plan is required where the trial court determines, as in this case, that termination is proper pursuant to sections 39.806(1)(b)-(d) or (f)-(m), Florida Statutes (2017). *See* § 39.806(2), Fla. Stat. (2017) ("Reasonable efforts to preserve and reunify families are not required if a court of competent jurisdiction has determined that any of the events described in paragraphs [39.806](1)(b)-(d) or paragraphs (1)(f)-(m) have occurred."). Likewise, our supreme court has recognized, in certain "extraordinary circumstances," termination of parental rights without the use of a case plan is the least restrictive means to protect a child. *In re T.M. & F.M.*, 641 So. 2d 410, 413 (Fla. 1994). Those extraordinary circumstances include severe or continuing abuse through continuing involvement and egregious abuse as found in then section 39.464, paragraphs (3) and (4), now renumbered as section 39.806(1)(c) and (1)(f). *Id.* "Only by the use of such measures will this Court be able to adhere to the 'overriding principle that it is the ultimate welfare or best interest of the child which must prevail.'" *Id.* (quoting *Padgett*, 577 So. 2d at 570).

Here, the trial court reasoned that "[t]he purpose of the least restrictive means analysis is to ensure that parents have an opportunity to rehabilitate and parent prior to the court terminating their fundamental rights to parent," and found that "[i]n this case, the parents require an opportunity to rehabilitate or fail." The trial court's legal conclusion,

5

however, is in conflict with its findings that there is "absolutely NO reasonable basis to believe [the mother] will improve," and that "the father continues to revert back to the same behavior" after receiving services and "appears to not want to change or acknowledge that there are any issues." Moreover, requiring "an opportunity to rehabilitate" the parents is inconsistent with the Legislature's mandate in section 39.806(2), given the statutory grounds proven for termination in this case. Thus, we conclude that the Department also proved by substantial, competent evidence that termination is the least restrictive means to protect the children from serious harm.

Therefore, on remand, we instruct the trial court to consider whether termination of R.A.D's and R.W.'s parental rights is warranted based upon the manifest best interest of the children, and to make appropriate findings. *See R.L. v. Dep't of Child. & Fams.*, 63 So. 3d 920, 921–22 (Fla. 5th DCA 2011) ("To terminate parental rights, the State must establish: (1) the existence of one of the statutory grounds set forth in Chapter 39; (2) that termination is in the best interest of the child; and (3) that termination is the least restrictive means of protecting the child from harm.").

AFFIRMED in part; REVERSED in part; and REMANDED.


ORFINGER, LAMBERT and EISNAUGLE, JJ., concur.